HARRIS, Presiding Judge.
Appellant was convicted of burglary in the first degree and the jury fixed his punishment at life imprisonment in the penitentiary. He was represented by court-appointed counsel and at arraignment pleaded not guilty. After sentence was imposed he gave notice of appeal and was furnished a free transcript. Trial counsel was appointed to represent him on this appeal.
*345 The evidence adduced by the State was not disputed. Appellant did not testify but offered alibi evidence.
There was no request for the affirmative charge and there was no motion for a new trial. When the State rested its case appellant made a motion to exclude the State’s evidence on several specified grounds, and arguments were heard. The Court overruled the motion to exclude.
The evidence for the State tended to show that Mrs. Rosie Garrett, a 75 year old woman, was in her home on the night of December 19, 1974, located at 2013 Fifteenth Place Southwest, Birmingham, Alabama. Around 6:30 or 7:00 p. m. on that date Mrs. Garrett was in her dining room sitting in a chair near a bed. She was quilting and had two electric irons holding the quilt on the bed. The front door was closed but it was not locked. Suddenly and without any warning two black males opened her front door and ran directly to where she was sitting. One was shouting, “Give me the money, give me the money.” Appellant picked up one of the irons and struck Mrs. Garrett on the head twice knocking her to the floor, and the other man grabbed her around the throat and started choking her. While she was on the floor one of the men took her keys and went through her dresser and took four cartons of cigarettes; then both men ran out the front door. Mrs. Garrett said she knew appellant and had seen him many times prior to the night of the burglary as her husband had carried him on fishing trips.
After the men left Mrs. Garrett managed to crawl to the door and call a neighbor who came over immediately and called the Police Department. When the officers arrived Mrs. Garrett identified Ronnie Parker, appellant, as the man who hit her on her head. She was carried by ambulance to the University Hospital where sutures were taken in her head.
Annie Pearl Cooke, a friend of Mrs. Garrett’s, was in the living room when the two men came in the front door. The friend ran out the back door and in her haste to get away she left one of her shoes. She returned later and got her shoe, and that was the last time she has been seen by Mrs. Garrett.
Burford Garrett testified that he went to his mother’s house at about 8:30 on the night of December 19, 1974. His mother told him that Ronnie Parker was the man who hit her in the head with the iron. He took his mother to swear out a warrant for appellant some time after she was treated at the hospital. Some time later he picked up Ronnie Parker at the Powderly Bus Stop after a boy who was with him identified Parker. Parker asked Garrett for a ride to town so that he could pick up his check and Garrett agreed to take him. Appellant voluntarily got in the car with Garrett but instead of taking him to get his check, Garrett started driving him toward Mason City where Rosie Garrett lived. Within a half of a block of Rosie Garrett’s home, appellant opened the car door and started to jump out but Burford Garrett restrained him and took him to his mother’s house. When they got to the victim’s house they got out of the car and stood in the front yard. Burford Garrett called his mother to come to the front door and he asked her if this was the man who hit her and she said yes. Appellant said to Burford, “Look man, I didn’t hit your mother. Snuffy is the one that hit her. I was with him but I didn’t hit her.” Then Burford Garrett carried appellant to the County jail where he was arrested on the warrant that had been issued after Rosie Garrett had signed a complaint charging him with this offense.
Kenneth W. Williams of the Birmingham Police Department received a radio dispatch on December 19, 1974, to go to the victim’s house. He was in his patrol car writing up a police report on an unrelated case by the aid of the dome light in his car when the call came over the radio at 7:20 p. m. He stated that it was dark and had been dark for approximately an hour. Upon arriving at the victim’s house he observed a black female about 74 years of age who was bleeding profusely around her head and eyes. Mrs. Garrett gave the officer a de *346 scription of Ronnie Parker. The officer was asked to give his best judgment as to the time it got dark on December 19, 1974, and he replied, “I would say approximately six o’clock, maybe a little earlier.”
Diane Garrett testified that Rosie Garrett was her mother-in-law; that between seven and eight o’clock on the night of December 19, 1974, she received a telephone call from Rosie Garrett and she and her husband left immediately and went to her home. She further stated that she had attempted in vain to locate Annie Pearl Cooke, the friend who was with her mother-in-law at the time of the offense.
Police Officer L. E. Strickland, an evidence technician with the Birmingham Police Department, went to the home of Mrs. Garrett on the night of December 19,. 1974, and processed the house for fingerprints. He was unable to lift any usable prints.
Bill Marshall testified that since 1962 he had been employed by the National Weather Service in Birmingham as a Principal Assistant. He stated that he had with him the official tables prepared by the Naval Observatory in Washington, D. C., of the time the sun set in the Birmingham area on December 19, 1974. The tables were prepared by astronomical calculations and were the official records used in every state in the union to determine the time of sun-, rise and sunset and other weather conditions. He testified that these records were true, correct and accurate. According to these official records the sun set in Birmingham, Alabama, on December 19, 1974, at 4:44 p. m. Central Standard Time.
Clarence Beard testified that Ronnie Parker was his nephew and lived with him on December 19, 1974. He stated that he and Ronnie went to the Birmingham Paper Company on that date at 9:00 a. m. and returned home at 10:00 on that same morning. After they returned home Beard did not see Ronnie Parker again and did not know where he went.
Charles Sparks, Jr. testified that between three and four o’clock on the afternoon of December 19, 1976, Ronnie Parker joined him at Jackson Heights and stayed with him until 9:30 that night. Sparks said they were drinking wine all during this time and that Ronnie did not leave his presence the entire time. Sparks stated that he and Ronnie Parker had been close friends for ten years. Sparks admitted that he pleaded guilty to a charge of burglary and grand larceny on October 1, 1968.
Appellant contends that the State failed to prove the alleged offense occurred during the nighttime and that he could not be guilty of burglary in the first degree. The victim testified that appellant and his companion entered her house at about 6:30 or 7:00 on the night of December 19, 1976, and attacked her, inflicting grievous injuries. The official weather records established that the sun set in Birmingham, Alabama, at 4:44 p. m. Central Standard Time on December 19, 1976.
In Gaskin v. State, 53 Ala.App. 64, 297 So.2d 388, this Court defined nighttime as, “that part of the natural day when the sun is beneath the horizon, or the time from sunset to sunrise; especially] the time between dusk and dawn, when no light of the sun is visible.”
The totality of the evidence presented by the State sufficiently established that the offense was committed at night and that the motion to exclude the evidence was properly overruled.
Appellant contends also that he was illegally arrested by a private citizen who did not advise appellant of the offense for which he was being arrested as provided by Section 15-10-7 Code of 1975. It is obvious from the testimony of the victim’s son that he did not formally place appellant under arrest. Appellant asked Burford Garrett to give him a ride and appellant voluntarily got in Garrett’s car. Garrett stated:
“I didn’t arrest him. I took him down there to the people at the County. They arrested him. I took him down there.”
Burford Garrett knew that a warrant had been issued after a complaint was signed by his mother for Ronnie Parker. Appellant voluntarily got in Garrett’s car and, after *347 his mother positively identified him as the man who entered her house on the night of December 19,1974, and struck her twice on the head, Burford Garrett transported him to the authorities where he was formally arrested. We hold there was a legal arrest under the facts and circumstances of this ease.
In a long line of eases we have held that alibi evidence is always a jury question. Ala.Dig.Criminal Law, «=* No. 739(2).
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none.
The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.